# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KELLY D. WILLIAMS, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| vs. | ) |
| TOWN & COUNTRY FORD LLC, | ) |
| Defendant. | ) |

## **COMPLAINT**

### I. **JURISDICTION**

1. This is a suit for employment discrimination instituted pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621 *et seq.* ("ADEA"). The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(a)(4).

2. Plaintiff Kelly D. Williams ("Plaintiff") timely filed her charge of discrimination against defendant Town & Country Ford LLC ("Defendant") with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this suit within 90 days after receipt of her right-to-sue letter from the EEOC.

## II. PARTIES

3.  Plaintiff is a citizen of the United States over the age of nineteen and a resident of Jefferson County, Alabama.

4.  Defendant is a limited liability company based in Bessemer, Jefferson County, Alabama.

5.  Defendant was a covered employer under the ADEA at all times pertinent to this case.

## III. FACTS

6.  Plaintiff was born in 1971.

7.  Defendant owns and operates an eponymous automobile dealership in Bessemer, Alabama and did so during the events of this case.

8.  After working for Defendant from 2007 to 2008, Plaintiff went back to work for Defendant in its business office at the dealership in or about January of 2014.

9.  About a year and a half after she returned, Plaintiff was moved into the position of Accounts Payable Clerk in the business office.

10.  In the summer of 2020, Maggi Miller was moved from working in a sales position at the dealership to working in the business office.

11.  Miller had worked at the dealership less than a year.

12.  Miller is in her mid 20's.

13. Miller had no experience in business office work.

14. When she was moved to the business office, Miller did scanning and cashiering and was also training in commercial billing.

15. In or about August of 2020, Plaintiff learned that Miller was being paid $15 an hour for her work in the business office, which was $2 an hour more than Plaintiff was being paid.

16. Plaintiff went to Sandy Thomas, Defendant's Controller.

17. Thomas was over every one working in the business office.

18. Plaintiff told Thomas that she knew that Miller had come in making $15 an hour with no business office experience and that she (Plaintiff) had been there nine years and was only making $13 an hour.

19. Plaintiff told Thomas that she knew that she would not be in the work force as long as Miller but that she should get paid as least as much as someone coming in "green."

20. Thomas rejected Plaintiff's request for a raise.

21. Consequently, on or about August 19, 2020, Plaintiff submitted a two-week notice of resignation.

22. Kyle Sain, co-General Manager of the dealership, asked Plaintiff about her resignation.

23. Plaintiff told Sain that she was 49 years old and had been working at the dealership nine years, that Miller was 25 years old and had been there less than a year, and that it was wrong for Miller to be paid more than her.

24. On or about August 24, 2020, Plaintiff was offered a $2 an hour raise, and she agreed to stay.

25. To get the raise, Plaintiff was required to sign a letter stating that she would back up Miller and Sharon Hardin, the Title Clerk working in the business office, in their job duties.

26. Plaintiff took that to mean her extra work would be to back them up while they were at lunch.

27. However, it turned out to be much more than that.

28. After Plaintiff got the raise, she was required to perform additional work of covering for the cashier on Mondays (all day), covering for Miller from 8 a.m. to 9 a.m. and during her lunch each day, and backing up Miller and Hardin when needed.

29. Also, Thomas began giving Plaintiff other assignments that she had not had to do before.

30. Plaintiff was the only person who handled accounts payable and no one provided her backup or help with her duties.

31. Plaintiff had to get her work done in addition to all the extra work she had been given.

32. Plaintiff worked forty hours a week, and it took her all that time to do her accounts payable work.

33. The extra duties Plaintiff was given took away at least sixteen hours a week and often more when Thomas gave her extra assignments.

34. It was very hard on Plaintiff to get her work done plus all the extra work she was given.

35. Plaintiff asked Thomas if she could come in early to have more time to do her work.

36. Thomas denied Plaintiff's request.

37. No one else in the business office was given additional work like Plaintiff was.

38. About two weeks after she got the raise and the extra duties, Plaintiff complained to Betty Williams, the Office Manager who is also over human resources, about the extra work she was having to do and the difficulties it gave her in getting her own work done.

39. Plaintiff told Williams she felt that she was being retaliated against for asking for the raise and asked Williams what she should do about it.

40. Williams told Plaintiff that she knew when she got the raise that she would have to do extra work.

41. Plaintiff also complained to Deborah Grady, the Assistant Controller, many times about the extra work.

42. Doing the extra work and getting all her work done with less than 60% of the time she previously had to do it was very stressful and took a toll on Plaintiff, physically, mentally, and emotionally.

43. Plaintiff could not do it anymore and, on or about December 4, 2020, resigned as a result.

## IV. CAUSES OF ACTION

### COUNT I

### ADEA - DISPARATE PAY

44. Paragraphs 1-43 above are incorporated by reference.

45. Defendant violated Plaintiff's rights under the ADEA by paying her less than a substantially younger, similarly situated employee because of her age.

46. Defendant knew, or showed reckless disregard for whether, its actions violated the ADEA.

47. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's employment acts as described herein violated the ADEA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violation of Plaintiff's rights under the ADEA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by ordering Defendant to pay her back-pay with interest, ordering Defendant to pay her liquidated damages, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv)  That the Court award such other available legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees and expenses.

## COUNT II

## ADEA - HARASSMENT

48. Paragraphs 1-43 above are incorporated by reference.

49. Defendant violated Plaintiff's rights under the ADEA by subjecting her to harassment in retaliation for complaining about age-based discrimination in pay,

which harassment constituted a hostile environment and/or culminated in an adverse employment action.

50. As a result of the above described discriminatory acts, Plaintiff has been made to suffer emotional distress and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's acts as described herein violated the ADEA;

(ii) That the Court enter an Order requiring Defendant to make Plaintiff whole by ordering Defendant to pay her compensatory damages as a jury may assess and liquidated damages;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate the ADEA;

(iv) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT III

## ADEA - CONSTRUCTIVE DISCHARGE

51. Paragraphs 1-43 above are incorporated by reference.

52. Defendant violated Plaintiff's rights under the ADEA by constructively terminating her employment because of her age and/or in retaliation for her complaints about age-based pay discrimination.

53. Defendant knew, or showed reckless disregard for whether, its actions violated the ADEA.

54. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's employment act as described herein violated the ADEA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violation of Plaintiff's rights under the ADEA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by ordering Defendant to pay her back-pay with interest, front-pay, compensatory damages as a jury may assess, liquidated damages, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv) That the Court award such other available legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees and expenses.

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: (205) 322-8999
Facsimile: (205) 402-4619
Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

s/ Adam M. Porter
Attorney for Plaintiff